### HOY et al. v. PEACOCK.

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 8, 1913. Rehearing Denied March 8, 1913.)

VENDOR AND PURCHASER (§ 274*)—VENDOR'S LIEN—FORECLOSURE—DEFENSES—BREACH OF WARRANTY.

Breach of a warranty deed based on an outstanding mortgage is no defense to a suit by the grantor to enforce a vendor's lien, where it does not appear that he is insolvent, that the grantee offered to rescind the contract, or that he has been evicted or is in danger of eviction, and at the time of the purchase he knew of the mortgage.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 769–771; Dec. Dig. § 274.*]

Appeal from District Court, Stonewall County; Jno. B. Thomas, Judge.

Action by J. W. Peacock against Thomas C. Hoy and others. Judgment for plaintiff, and defendants appeal. Affirmed.

N. R. Morgan, of Spur, for appellants. J. M. Carter, of Aspermont, and Theodore Mack, of Ft. Worth, for appellee.

SPEER, J.    J. W. Peacock sued Thos. C. Hoy and others, vendees of said Hoy, to collect certain vendor's lien notes executed by Hoy as part of the purchase money for a certain tract of land situated in Stonewall county, conveyed by Peacock and wife to Hoy by a deed of general warranty, and to foreclose the vendor's lien on said property. There was a judgment for the plaintiff, and the defendants have appealed.

The trial court made the following findings of fact, which are not objected to by appellants, and which are, therefore, adopted by us, to wit:

"First. The court finds that on the 23d day of September, A. D. 1908, the defendant Thos. C. Hoy made, executed, and delivered to the

plaintiff, J. W. Peacock, his five promissory notes for the sum of $518.51 each, payable to the order of plaintiff at Aspermont, Tex., on the 1st day of January, 1912, 1913, 1914, 1915, and 1916, respectively, each bearing interest at the rate of 9 per cent. per annum from date until paid, providing for 10 per cent. attorney's fees on the principal and interest then due in case of suit brought on same; that each of said notes provided that a failure to pay same or either of them, or a failure to pay any installment of interest thereon when due, should at the election of the holder of said notes or either of them mature all of said notes. There were originally eight notes in this series, the first three having been paid by defendants, all of the notes sued on had by plaintiff been placed in the hands of attorneys for collection suit.

"Second. The court finds that each of said notes was given in part payment of the purchase money for a deed from the plaintiff to the defendant Thos. C. Hoy for a tract of and situated in Stonewall county, Tex., being the N. E. ¼ of section 207, in block D, Cert. No. 30–2586, granted to the Houston & Texas Central Railway Company, and containing 165.18 acres of land; that said deed contained the usual covenants of general warranty, and the vendor's lien was reserved in said deed to secure the payment of each of said notes; that the defendant failed to pay the first note and all the accumulated interest on all of said notes from and after the 1st day of January, 1911, and the plaintiff elected to declare each and all of them due and payable and brought this suit.

"Third. The court further finds that on September the 23d, 1908, the defendant Thos. C. Hoy, by his general warranty deed of that date, sold and conveyed to the defendant E. B. Billingsley the N. ½ of the N. E. ¼ of said section No. 207, block D, Houston & Texas Central Railway Company in Stonewall county, said deed being duly of record in said county, and said Billingsley at said date and in said deed contracted and agreed to assume to pay off and discharge one-half of all indebtedness then existing on the entire N. E. ¼ of said section No. 207, as shown by the deed executed by plaintiff and wife to Thos. C. Hoy as above set forth.

"Fourth. The court further finds that on the 17th day of February, 1909, the defendant Thos. C. Hoy, by his warranty deed, sold and conveyed to the Stamford & Northwestern Railway Company, a railway corporation, right of way consisting of about 8.61 acres of land, the same being part of the said N. E. ¼ of said section No. 207.

"Fifth. The court further finds that on the 27th day of September, 1911, the defendant E. B. Billingsley by his warranty deed sold and conveyed to W. G. Billingsley part of the N. E. ¼ of section No. 207, block D, Houston & Texas Central Railway Company

land in Stonewall county, Tex., the metes and bounds of which are set out in the plaintiff's petition, the same being 50 acres, and in which deed the defendant W. G. Billingsley assumed one-half of purchase-money notes executed by Thos. C. Hoy.

"Sixth. The court finds that on the 16th day of November, 1911, W. G. Billingsley and wife conveyed to E. B. Billingsley a part of the land above described, to wit, part of the N. E. ¼ of section No. 207, being 25 acres of the 50 acres theretofore conveyed to W. G. Billingsley, which deed is duly recorded in the deed records of Stonewall county, Tex., that W. G. Billingsley disclaimed all interest in all of the land in controversy, except said 25 acres.

"Seventh. That on the 16 day of November, 1911, the defendant E. B. Billingsley and wife, Kate Billingsley, by their general warranty deed, conveyed to the defendant D. R. McMahan part of the land described as the N. E. ¼ of section 207, block D, Houston & Texas Central Railway Company and in Stonewall county, Tex.

"Eighth. The court further finds that on January 2, 1911, J. W. Peacock released the vendor's lien owned and held by him against 25 acres of said section No. 207 owned by W. G. Billingsley in this suit, as follows: Beginning at the N. W. corner of the N. E. ¼ of section No. 207, block D, Cert. No. 30–2586, originally granted to the Houston & Texas Central Railway Company; thence south 1,310 feet to a stone, thence east 725 feet to a stone, thence north 1,310 feet to a stone, thence west 725 feet, to the place of beginning, and containing 25 acres, more or less, which release was duly recorded in the deed records of Stonewall county Texas.

"Ninth. The court finds that at the time the defendant Thos. C. Hoy purchased the land in controversy the contract price was $25 per acre, aggregating the total of $4,129.-50, which was the reasonable value of said land at the time, and that at the time that the defendant Thos. C. Hoy purchased the land from the plaintiff that there was then a valid outstanding and subsisting mortgage against said land in favor of the Texas Securities Company of Ft. Worth, Tex., of about the sum of $3,200, payable in installments maturing on similar dates as the notes given by the defendant Thos. C. Hoy to the plaintiff in this case, which indebtedness has been transferred to Western Hawaiian Loan Company; that neither the defendant Thos. C. Hoy at the time he received the said deed from the plaintiff, nor any of the other defendants in this case, assumed said mortgage as a part of the purchase money in this case, but each and all of the defendants at the time of their respective purchase of the lands in controversy at the time they received their respective deeds knew of the existence of said mortgage, and were cognizant of the same, and relied upon the plaintiff to pay the

same off; that the plaintiff has paid off all the indebtedness to the Texas Securities Company represented by the said mortgage that is due at the date of this trial, and that a considerable portion of the same will not be due until 1913. The court finds that the installment note (one of the series executed by plaintiff to Texas Securities Company) due in 1909 had been extended to January 1, 1913, by the legal holder without the knowledge of any of defendants. The court finds the evidence warrants this conclusion that there was an oral understanding between plaintiff and purchaser from him that the proceeds of the notes executed by Hoy should be applied on the notes due secured by the mortgage to the Texas Securities Company."

Upon these findings no other judgment than one for the appellee could properly have been rendered, the only defense being that interposed by appellant Hoy, to the effect that appellee had executed his general warranty deed to the property against which the lien was sought to be foreclosed, and that there was at the time of the institution of the suit and trial a valid outstanding mortgage lien against the property in favor of the Texas Securities Company. The contention of appellants is illustrated by the proposition under their first assignment of error that "a vendor under covenants of general warranty is not entitled to a foreclosure and sale until existing incumbrances against the premises conveyed are discharged by him." But this rule is subject to many well-defined exceptions. There is neither allegation nor finding to the effect that appellee is insolvent, neither is there any offer on the part of appellants to rescind the contract, and to restore the possession of the property. The allegations of the answer do not show, nor do the findings indicate, that there has been any eviction of appellants, or that there is any danger of an eviction, and the findings show that at the time of the purchase appellant Hoy had full notice of the present incumbrances. The contract between the parties, therefore, must determine their rights; that is, appellants have accepted appellee's warranty as to the title, and must look alone to this for the measure of their redress. Knight v. Coleman County, 51 S. W. 258, and authorities there cited; Blewitt v. Greene, 57 Tex. Civ. App. 588, 122 S. W. 914. The answer shows and the findings support such allegation that there was an oral understanding between the parties that the payments on the land when made should be applied to the extinguishment of the lien against the land, but there is no contention that such promise on the part of appellee has been broken, or that any payments have been made on the notes which have not been applied according to the agreement. Necessarily, such a contract contemplates that the notes should be first paid before the proceeds could be applied to the lien debt. If a defendant when sued for the purchase money of land could successfully defend upon the grounds that there were outstanding liens against the land, then it might follow that he could retain the land without paying for it, or at least without paying what the parties had stipulated for. It is obviously inequitable to permit such a defense in any case without an offer by the defendant to restore the land. But even to permit the defense upon a restoration of the land where the defendant at the time of the purchase knew of the defect and meant to assume it would clearly be to ignore the contract, which the court will never do.

Upon the facts found, the judgment of the district court in favor of the appellee is affirmed.